UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

REBECCA GEFFNER, as Executrix of the
ESTATE OF ALFRED GEFFNER, deceased,

08-cv-1538 (ARR) (LB)

Plaintiff,

NOT FOR PRINT
OR ELECTRONIC
PUBLICATION

-against-

KATHLEEN SEBELIUS, Secretary of the United
States Department of Health and Human Services

OPINION AND ORDER

Defendant.

-------------------------------------------------------------------X

ROSS, United States District Judge:

Plaintiff, executrix of the Estate of Alfred Geffner ("beneficiary"), filed a complaint in

the instant action on April 14, 2008, challenging the Secretary's final decision to deny Medicare

payment for the hospitalization of Alfred Geffner, deceased, at St. Francis Hospital, from

November 21, 2003 to December 20, 2003, and at Mercy Hospital, from March 25, 2004 to

August 28, 2004. Defendant now moves for judgment on the pleadings pursuant to Fed. R. Civ.

P. 12(c). For the reasons set forth below, defendant's motion is denied, and the action is

remanded to the Secretary for further proceedings consistent with this opinion.

## BACKGROUND

A. St. Francis Hospital ("Claim One")

Mr. Geffner was hospitalized at St. Francis Hospital in Roslyn, NY on several occasions.

His first hospitalization lasted six days, from June 14, 2003 until June 19, 2003. (A.R. at 218.)

The second hospitalization was nine days in length, from June 22, 2003 to July 1, 2003, (A.R. at

219), and the third stay lasted for 47 days, from July 5, 2003 until August 21, 2003. (A.R. at 221, 224.) Mr. Geffner's fourth hospitalization at St. Francis lasted 119 days, from August 23, 2003 until February 19, 2004. (A.R. at 224.) Mr. Geffner was again admitted from March 15, 2004 to March 23, 2004. (A.R. at 244.) Plaintiff claims that prior to Mr. Geffner's admission to St. Francis, Mr. Geffner was legally blind and physically disabled, but was performing activities of daily living with moderate assistance, including breathing autonomously, eating, drinking, speaking, and functioning cognitively. (Compl. ¶ 45.) Plaintiff alleges that provider negligence, abuse and neglect caused, among other complications, hospital-borne infections that contributed to Mr. Geffner's incapacitation and extended hospital stays. (Compl. ¶ 46-47.)

St. Francis Hospital submitted a claim for payment to Medicare relating to Mr. Geffner's hospitalization from August 23, 2003 to December 20, 2003. (A.R. at 186.)[1] On September 15, 2004, Centers for Medicare and Medicaid Services ("CMS") issued a Medicare Summary Notice denying payment because Mr. Geffner had exhausted the number of covered days permitted under the Part A program of Medicare, which provides for 90 days of inpatient services per benefit period or spell of illness, plus an additional 60 lifetime reserve days, which can be used only once during a beneficiary's lifetime. (A.R. at 186-87.) Plaintiff filed an appeal on her father's behalf, and a Medicare Redetermination Notice was issued by Empire Medical Services, the Medicare intermediary, on February 7, 2005, upholding the denial of payment. (A.R. at 177-80.)

Plaintiff then filed a request for an ALJ hearing, which was held on August 8, 2005. (A.R. at 341-81.) Prior to the hearing, plaintiff's representative from the Medicare Rights Center sought an adjournment via fax. (A.R. at 114; 344.) At the hearing, the representative was not

---

[1] The claim for payment relating to the period December 21, 2003 to February 19, 2004 is the subject of separate administrative proceedings. (A.R. 8, n. 1; 349-352.)

present, and the ALJ indicated that he had denied the adjournment. (A.R. at 344.) When the ALJ asked plaintiff if she wished "to waive your right to the attorney . . . and proceed today, on your own," plaintiff stated "I don't wish to waive my right. (A.R. at 344.) The ALJ offered to provide a two day adjournment, until August 10, 2005, and stated "on that day, we're going to have a hearing. Or, I'm going to dismiss this case." (A.R. at 347.) Plaintiff responded, "[w]ell then, I'll just go forward today." (A.R. at 347.) When the ALJ stated that "I don't want to induce you to waive anything," and informed plaintiff that she would be able to hire a lawyer if she wished to appeal the ALJ's decision, plaintiff waived her right to representation at the hearing. (A.R. at 349.)

In his decision dated September 25, 2005, the ALJ found that the beneficiary had exhausted his days of Medicare Part A coverage as of November 20, 2003. The ALJ then mistakenly concluded that the period of non-coverage began on August 23, 2003, rather than November 21, 2003. (A.R. at 13-21; 107.)


B. Mercy Hospital ("Claim Two")

Following his release from St. Francis Hospital on March 23, 2004, Mr. Geffner was admitted to Mercy Hospital on March 25, 2004, where he remained until August 28, 2004. (A.R. at 7; 330.) Plaintiff alleges that Mr. Geffner suffered abuse and neglect at Mercy Hospital, where he acquired infection and sepsis, and that provider harm at the facility contributed to his decline and untimely death. (Pl.'s Aff. in Opp. ¶ 12-13; A.R. 328.)

A claim was submitted to Medicare by Mercy Hospital for inpatient hospital services provided for March 25, 2004 to August 28, 2004. On December 15, 2004, coverage was denied for the period June 14, 2004 to August 28, 2004 on the grounds that Mr. Geffner had exhausted

3

his ninety day benefit period as of June 14, 2004. (A.R. at 329-33.) Plaintiff made a request for redetermination, (A.R. at 328), and the denial of additional Medicare payment was upheld on March 9, 2005. (A.R. at 318-26.) Plaintiff requested a hearing before and ALJ, and a hearing was held on August 29, 2005. (A.R. at 382-92.) At the hearing, plaintiff acknowledged that she wished to proceed without a lawyer to represent her. (A.R. at 384.) The ALJ stated that plaintiff's arguments that the hospital was at fault for the extent of Mr. Geffner's stay, and that the hospital failed to provide notice to plaintiff regarding Mr. Geffner's exhaustion of benefits did not affect the issue of Medicare coverage, and stated on the record that he had no jurisdiction to cover issues of alleged abuse by the facility. (A.R. at 386. 388, 390-91).

The ALJ issued his decision on September 23, 2005, upholding the denial of payment. (A.R. at 272-84.) The ALJ determined that a new benefit period began when Mr. Geffner was hospitalized at St. Francis on March 15, 2004, and that he had used eight days of coverage from March 15, 2004 through March 23, 2004. (A.R. at 274.) The ALJ found that Mr. Geffner had eighty-two benefit days remaining and no lifetime reserve days available at the time of his admission to Mercy Hospital. (A.R. at 274.) Accordingly, the ALJ found that the eighty-two benefit days expired on June 14, 2004, and that no further days were reimbursable for the period of March 25, 2004 to August 28, 2004. (A.R. at 274-75.) The ALJ dismissed plaintiff's claims regarding alleged abuse by the facility, and lack of notice from the hospital regarding coverage. (A.R. at 275.)


C. <u>Medicare Appeals Council Decision</u>

Plaintiff appealed the September 25, 2005 (Claim One) and the September 23, 2005 (Claim Two) to the Medicare Appeals Council ("Appeals Council" or "MAC") of the

4

Departmental Appeals Board, which consolidated both decisions into one request for review. (A.R. at 3.) On November 30, 2007, the Appeals Council granted plaintiff's request for review because both ALJ decisions contained an error of law, and advised her of its proposed decision. (A.R. 88-97.) Plaintiff objected to the proposed decision in writing on January 15, 2008. (A.R. at 22-34.) On January 25, 2008, the Appeals Council issued a decision which became the final decision of the Secretary. (A.R. at 1-12.)

Regarding Claim One, the Appeals Council found that the ALJ's decision was internally inconsistent. The ALJ first found that the ninety benefit days and sixty lifetime reserve days were exhausted as of November 20, 2003, and thus there was no Medicare coverage available for the November 21, 2003 to December 20, 2003 period. (A.R. at 6-7.) However, the Appeals Council noted that the ALJ mistakenly concluded later in the opinion that there was no Medicare coverage from the period of August 23, 2003 through December 20, 2003. The Appeals Council thus vacated the findings of the ALJ and entered new findings, making clear that the payment could be made for the period of hospitalization from August 23, 2003 through November 20, 2003, but that additional payment could not be made for the period of hospitalization from November 21, 2003 to December 20, 2003. (A.R. 6-7.)

With respect to Claim Two, the Appeals Council found that the ALJ's reasoning was incorrect. The Council found that the ALJ erred in determining that a new benefit period began with Mr. Geffner's hospitalization at St. Francis Hospital on March 15, 2004. (A.R. at 8, 274.) The Appeals Council stated that a new benefit period could not have begun on March 15, 2004, as Mr. Geffner had not remained outside an inpatient facility for sixty consecutive days prior to the date of service in question, as required by the Social Security Act and 42 C.F.R. § 409.60. (A.R. at 8, 12.) The Appeals Council found that Mr. Geffner had already exhausted both the

5

ninety day benefit period and all sixty lifetime reserve days during the benefit period, and was thus not entitled to any coverage between March 25, 2004 and August 28, 2004. (A.R. at 8, 12.)

The Appeals Council also noted that "[q]uestions of substandard treatment were not before the ALJ. Other areas of recourse, which were at that time or still may be available to the beneficiary's estate . . . are not relevant to the question of available Medicare coverage days, and were outside to ALJ's jurisdiction." (A.R. 9.) Finally, the Appeals Council noted that "the issue of whether the hospital issued a notice of non-coverage is also not applicable in these cases," and that in this case, "the hospital had no obligation to issue a notice of non-coverage to the beneficiary." (A.R. at 9.)

D. The Instant Action

Plaintiff filed a complaint in the instant action on April 14, 2008, challenging the Secretary's final decision to deny Medicare payment for the hospitalization of Alfred Geffner, deceased, at St. Francis Hospital, from November 21, 2003 to December 20, 2003, and at Mercy Hospital, from March 25, 2004 to August 28, 2004. Plaintiff claims that no liability can be imposed upon Mr. Geffner based on the quality of care received, the lack of notice of remaining benefit days provided to plaintiff under the applicable regulations, and procedural failures during the agency proceedings, including failure to develop the record and interference with the right to representation. On April 30, 2009, defendant moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), requesting that I affirm the Secretary's adoption of the Appeal Council's final decision because the Appeal Council's conclusions were based on substantial evidence and on the correct legal standards. For the reasons set forth below, defendant's motion is denied.

6

**DISCUSSION**

A. <u>The Medicare Program</u>

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., governs Medicare, a federally-funded health insurance plan for eligible elderly and disabled persons. Medicare "Part A" provides for the payment of inpatient hospital and related post-hospital benefits for eligible individuals. 42 U.S.C. § 1395c et seq. Pursuant to 42 U.S.C. § 1395(a)(1), Medicare Part A provides coverage for: "inpatient hospital services or inpatient critical access hospital services for up to 150 days during a spell of illness minus 1 day for each day of services in excess of 90 received during any preceding spell of illness." 42, U.S.C. § 1395d(a)(1). A "spell of illness," also known as a "benefit period," is defined by the Act as a period of consecutive days:

> (1) beginning with the first day (not included in a previous spell of illness) (A) on which such individual is furnished inpatient hospital services, inpatient critical access hospital services or extended care services, and (B) which occurs in a month for which he is entitled to benefits under part A of this subchapter, and

> (2) ending with the close of the first period of 60 consecutive days thereafter on each of which he is neither an inpatient of a hospital or critical access hospital nor an inpatient of a facility described in section 1395i-3(a)(1) of this title or subsection (y)(1) of this section.

42 U.S.C. § 1395x(a); <u>see also</u> 42 C.F.R. § 409.60(a), (b) (explaining how to determine when a benefit period begins and ends).

The applicable regulations provide that a Medicare Part A beneficiary is entitled to up to ninety "regular benefit days" in each benefit period, 42 C.F.R. § 409.61(a)(1), and:

> . . . a non-renewable lifetime reserve of 60 days of inpatient hospital . . . services that he may draw upon whenever he is hospitalized for more than 90 days in a benefit period. Upon exhaustion of the regular benefit days, the reserve days will be used unless the beneficiary elects not to use them, as provided in § 409.65.

42 C.F.R. § 409.61(a)(2). Lifetime reserve days are non-renewable, once used in a patient's lifetime, they are no longer available to a beneficiary. <u>See</u> 42 C.F.R. § 409.65(a)(3).

B.  Standard of Review

Judicial review of administrative decisions under the Social Security Act are governed by 42 U.S.C. § 1395ff(b)(1), which incorporates provisions of 42 U.S.C. § 405(g).  The ALJ's determination creates the entire and complete record of the case. 42 C.F.R. § 405.1042(a)(1). The Appeal Council's decision represents the final decision of the Secretary and "is binding on all parties unless a Federal district court issues a decision modifying the MAC's decision . . . ." 42 C.F.R. § 405.1130.  The MAC's decision ". . . if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); 42 C.F.R. § 405.1136(f); Fratellone v. Sebelius, 2009 WL 2971751, at * 9 (S.D.N.Y. 2009); Friedman v. Sec'y of Health & Human Servs., 819 F.2d 42, 44 (2d Cir. 1987).  The reviewing court upholds the Secretary's findings of fact if they are supported by "substantial evidence," 42 U.S.C. §§ 405(g), 1395ff(b), but reviews the Secretary's conclusions of law de novo. See Keefe o/b/o Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984).  "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Murphy v. Secretary of Health and Human Services, 62 F.Supp.2d 1104, 1104 (S.D.N.Y. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401, (1971)).  Ultimately, the claimant bears the burden of proving her entitlement to Medicare coverage. Keefe, 71 F.3d at 1062; Friedman v. Secretary of Dep't of HHS, 819 F.2d 42, 45 (2d Cir. 1987).


C.  The Secretary's Findings Regarding Benefit Days and Lifetime Reserve Days Used

As described above, the Medicare Act and applicable regulations establish the number of benefit days and lifetime reserve days available to a beneficiary under Medicare Part A.  As the Appeals Council found, a beneficiary is only entitled to ninety benefit days for each "spell of

8

illness" or benefit period, and a non-renewable lifetime reserve of sixty additional days. 42

U.S.C. § 1395d(a)(1); 42 C.F.R. §§ 409.61(a)(2), 409.65. A benefit period begins on the first

day a beneficiary receives inpatient services, and another benefit period does not begin until

sixty days have passed during which the beneficiary has not received inpatient care. 42 U.S.C. §

1395x(a); 42 C.F.R. § 409.60.

     With respect to plaintiff's first claim, Mr. Geffner was hospitalized at St. Francis Hospital

from June 14, 2003 to June 19, 2003 for a total of five days, (A.R. at 218), from June 22, 2003 to

July 1, 2003 for a total of nine days, (A.R. at 219), and for 47 days, from July 5, 2003 until

August 21, 2003. (A.R. at 221, 224.) Having thus used sixty-one of his benefit days, Mr.

Geffner had twenty-nine remaining, in addition to his sixty lifetime reserve days, for a total of

eighty-nine days of coverage. Mr. Geffner was re-admitted to St. Francis on August 23, 2003,

and on November 20, 2003, his eighty-nine remaining days expired. (A.R. at 224.) The record is

clear regarding Mr. Geffner's dates of admission at St. Francis, and given the Medicare Part A

statutory and regulatory scheme regarding Part A benefits, I cannot find that the Appeals Council

erred in finding that Mr. Geffner utilized all available days of coverage on November 20, 2003.

     With respect to Claim Two, Mr. Geffner was again admitted to St. Francis on March 15,

2004, where he remained until March 23, 2004. (A.R. at 244.) Because his prior release from the

facility occurred on February 19, 2004, (A.R. at 224), sixty consecutive days had not elapsed

during which Mr. Geffner was "neither an inpatient of a hospital or critical access hospital nor an

inpatient of a facility," as required by 42 U.S.C. § 1395x(a) to commence a new benefit period.

See 42 U.S.C. § 1395x(a). Thus, the benefit days and lifetime reserve days relevant to the "spell

of illness" or a benefit period for which Mr. Geffner was hospitalized at Mercy Hospital were

exhausted on November 20, 2003. The record is similarly clear with respect to Mr. Geffner's

dates of admission at Mercy Hospital. Accordingly, I cannot find that the Appeals Council erred in finding that Mr. Geffner was not entitled to additional benefit days or lifetime reserve days for the period of March 25, 2004 to August 28, 2004.

## D. Plaintiff's Additional Claims

### 1. *Quality of Care Provided*

Plaintiff alleges that her father did not receive adequate care at St. Francis and Mercy hospitals, and alleges that abuse, neglect, and malpractice at the facilities caused infections and incapacitation that resulted in the lengthy stays for which coverage is being denied. In support of her claim, plaintiff submits an affidavit and lengthy report from Dr. Charles Phillips, who reviewed the medical records from the two facilities, and claims that Mr. Geffner was the victim of gross medical malpractice and negligence. (Pl.'s Aff in Opposition, Ex. 3 (Aff. of Charles Phillps).)

While the allegations plaintiff makes against St. Francis and Mercy Hospitals are serious, the ALJ and Appeals Council did not err in finding these allegations outside the scope of the proceedings, and irrelevant to the issue of available benefit days under Medicare Part A. Neither the applicable portions of the Social Security Act nor the implementing Medicare regulations provide for an extension of benefit days under Part A based on allegations of hospital malpractice. See 42 U.S.C. §§ 1395c, 1395d(a), 1395x(a); 42 C.F.R. § 409.61, 409.65. The Medicare Part A statutory and regulatory scheme does not envision ALJs and the Medicare Appeals Council adjudicating issues of medical malpractice; such issues are better suited for civil tort actions or complaints filed with the Centers for Medicare and Medicaid Services

("CMS"). Accordingly, plaintiff's allegations with respect to the quality of care received by Mr. Geffner, though troubling, have no bearing on the instant action.

2. *Failure to Provide Notice of Remaining Benefit Days*

Plaintiff also alleges that neither she nor Mr. Geffner received notice from St. Francis or Mercy Hospitals as to non-coverage, and thus plaintiff is entitled to a waiver of liability for the non-covered days. (A.R. at 26; Pl.'s Mem. at 58.)

Plaintiff cites a number of statutes and regulations that have no bearing on a notice requirement regarding the exhaustion of benefit days or the use of lifetime reserve days. See 42 U.S.C. § 1320c-3(a)(3)(A) (regarding peer review organizations); 42 U.S.C. § 1395x(k)(4) (requiring notice following utilization review that any further stay in the institution is not medically necessary); 42 C.F.R. § 482.30(d)(3) (regarding hospital conditions of participation and determination that an admission or continued stay is not medically necessary); 42 C.F.R. § 489.27 (requiring notice in cases of discharge by the facility, or termination of services provided by the facility); 42 C.F.R. § 405.1205 (regarding notification of appeal rights in the event of discharge or formal release of a beneficiary from an inpatient hospital); 42 C.F.R. § 405.1206 (regarding procedural rights when a hospital determines that inpatient care is no longer necessary).

Plaintiff however, does cite relevant regulations regarding a beneficiary's use of lifetime reserve days. Under 42 C.F.R. § 409.6, when a beneficiary "has exhausted the 90 regular benefit days, the hospital . . . may bill Medicare for lifetime reserve days *unless* the beneficiary elects not to use them or . . . is deemed to have elected not to use them." 42 C.F.R. § 409.65(a)(1) (emphasis added). The regulation provides that an election not to use reserve days may be filed

11

by the beneficiary or, if the beneficiary is unable to act, the beneficiary's legal representative. 42

C.F.R. § 409.65(c). The election must be filed in writing. A beneficiary "will be deemed to

have elected not to use lifetime reserve days if the average daily charges for such days is equal or

less than the applicable coinsurance amount . . . ." 42 C.F.R. § 409.65(b). Revocation may also

take place within ninety days after discharge. 42 C.F.R. § 409.66. These regulations, however,

do not specifically require any notification from the hospital that regular benefit days are set to

expire. That requirement is found in the Medicare Benefit Policy Manual, which states that,

> Hospitals are required to notify patients who have already used or will use 90
> days of benefits in a benefit period that they can elect not to use their reserve days for all
> or part of a stay. The hospital notice should be given when the beneficiary has five
> regular coinsurance days left and is expected to be hospitalized beyond that period.
> Where the hospital discovers the patient has fewer than five regular coinsurance days left,
> it should immediately notify the patient of this option.

Medicare Benefit Policy Manual, Pub. 100-02, Ch. 5 § 30.1. Despite the requirement, the

Manual does not provide or otherwise indicate that a remedy exists for failure to provide notice,

such as hospital liability for coverage or a "waiver" of repayment for beneficiaries. In 2004, the

Department of Health and Human Services, Office of the Inspector General ("OIG"), found that

fourteen percent of surveyed hospitals did not provide required notification regarding lifetime

reserve days, and that thirty-three percent of hospitals are "unable to strictly comply with the

Medicare Benefit Policy Manual guidelines that require them to notify patients when they have 5

regular coinsurance days remaining." See Department of Health and Human Services, Office of

the Inspector General, "Medicare Lifetime Reserve Days: Report to Congress," 7 (Dec. 2004),

available at http://oig.hhs.gov/oei/reports/oei-09-04-00100.pdf. The OIG report similarly does

not suggest that failure to provide notice results in hospital liability or a waiver of beneficiary

liability for payment of non-covered days, only that "if the beneficiary uses all 60 lifetime

reserve days and remains in the hospital beyond 150 days, the beneficiary becomes responsible for hospital charges on the 151st day." Id. at iii.

The only potential remedy for a lack of notice can be found in 42 C.F.R. § 409.68, entitled "Guarantee of payment for inpatient hospital . . . services furnished before notification of exhaustion of benefits." The regulation states that payment may be made for inpatient hospital services after a beneficiary has exhausted the available benefit days, if: (1) services were furnished before Medicare notified the hospital that the beneficiary had exhausted available benefit days, (2) the hospital was unaware that the beneficiary had exhausted the available benefit days and could reasonably have assumed that the beneficiary was entitled to have payment made for these services, (3) payment would be precluded solely because the beneficiary has no benefit days available, and (4) the hospital claims reimbursement for the services. 42 C.F.R. § 409.68(a). If these conditions are met, "Medicare payment may be made for the day of admission, and up to 6 weekdays thereafter, plus any intervening Saturdays, Sundays, and Federal holidays." 42 C.F.R. § 409.68(b). Any payment made to the hospital under 42 C.F.R. § 409.68 is considered an "overpayment" to the beneficiary and may be recovered under the relevant overpayment provisions. 42 C.F.R. § 409.68(c). The Medicare Benefit Policy Manual states that the "guarantee of payment provisions are not applicable until the individual has exhausted 60 lifetime reserve days of inpatient hospital services except where the beneficiary is deemed to have elected not to use lifetime reserve days." Medicare Benefit Policy Manual, Pub. 100-02, Ch. 5 § 10.1

The government takes the position that the use of "may" in 42 C.F.R. § 409.68 provides CMS with discretion to make payment for inpatient hospital services, but does not require that the agency does so. (Govt.'s Reply Br. at 5 n. 4.) However, under 42 C.F.R. § 412.2, the

"[g]uarantee of payment days" are included in "payable days of care" when the agency is determining the basis of payment to a hospital, seemingly on a non-discretionary basis. Additionally, the heading of 42 C.F.R. § 409.68 refers to the regulation as a "guarantee of payment." In the statutory context, it is well settled that "the title of a statute . . . cannot limit the plain meaning of the text," nonetheless, statutory titles and section headings "are tools available for the resolution of a doubt about the meaning of a statute." Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 128 S.Ct. 2326, 2336 (2008) (quoting Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 212 (1998); Porter v. Nussle, 534 U.S. 516, 528 (2002)). Here, the seemingly conflicting provisions of 42 C.F.R. § 409.68 and 42 C.F.R. § 412.2 create an ambiguity in the regulatory scheme. While an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation," Auer v. Robbins, 519 U.S. 452, 461 (1997), neither the ALJ nor the Appeals Council addressed the issue of whether plaintiff was entitled to guarantee of payment days under 42 C.F.R. § 409.68, and whether such days were properly included in the basis of payment under 42 C.F.R. § 412.2. Additionally, the government alleges that even if plaintiff were entitled to additional coverage under 42 C.F.R. § 409.68, any such payment would be recoverable by CMS as an "overpayment." (Govt.'s Reply Br. at 5 n. 4.) However, whether or not payment under section 409.68 would be recoverable in plaintiff's specific case was not addressed by the ALJ or Appeals Council in proceedings below.

Because plaintiff raised 42 C.F.R. § 409.68 before the agency, and because the agency failed to address her claim regarding guarantee of payment under the regulation, I find that remand is warranted to provide the agency an opportunity to address plaintiff's argument under section 409.68.

### 3. *Failure to Develop the Administrative Record*

Plaintiff also alleges that the Administrative Record was deficient and that the ALJ failed in his duty to adequately develop the record. In the Social Security context, the Second Circuit has found that "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Collado v. Astrue, 2009 WL 2778664, at *10 (S.D.N.Y. 2009). The duty to develop the record in Social Security disability benefit cases arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination. Pratts, 94 F.3d at 37 (citing 20 C.F.R. § 404.1512(d)-(f) (1995)). Applying the principles from Social Security disability benefit cases to those involving Medicare claims, courts have found that the Secretary (through the ALJ) has the duty to fully and fairly develop the record. Chamberlain v. Leavitt, 2009 WL 385401, at * 7 (N.D.N.Y. 2009) (citing Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir.1991)). This duty includes seeking clarification when a crucial issue is underdeveloped. Id. (citing Hill, on Behalf of Hill v. Leavitt, 2007 WL 1074090, at *1 (D.N.D. 2007)). When the plaintiff is unassisted by counsel, the ALJ has the duty "to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts." Gold v. Secretary of Health, Ed. and Welfare, 463 F.2d 38, 43 (2d Cir. 1972).

In the case at hand, the main issue before the ALJ was how many benefit days Mr. Geffner was entitled to under Medicare Part A. Included in the 392 page administrative record in this case are documents indicating dates of admission and discharge at St. Francis and Mercy Hospitals and the periods for which Medicare coverage was denied, plaintiff's submissions during the appeals process, and transcripts of the hearings before the ALJs. The record is thus

complete with respect to the issue of how many days Mr. Geffner remained in the facilities, and how many benefit days and lifetime reserve days were utilized.

The documents plaintiff finds lacking in the record include notices provided by Medicare to the hospitals regarding coverage, Medicare Program Manuals, medical records reviewed by Medicare, all bills and claim forms submitted to Medicare by St. Francis and Mercy Hospitals, physician certifications provided to Medicare for the subject hospitalizations, and service agreements between the hospitals and the Secretary during the relevant period. (Pl.'s Mem. at 27.) Plaintiff also claims that the ALJ and Appeals Council violated plaintiff's due process rights by failing to subpoena the relevant records and documents. (A.R. at 24; Pl.'s Mem. at 28.)

Plaintiff has no claim with respect to the publically available Medicare Program Manuals.[2] Additionally, because the quality of care received by Mr. Geffner and the hospitals' alleged failure to comply with Medicare standards are not at issue, medical records relating to malpractice allegations, and documents related to hospital compliance with Medicare standards are not relevant to the critical issue before the agency.

However, as to plaintiff's limited claim under 42 C.F.R. § 409.68 discussed above, the factual record with respect to the required conditions of the regulation is not fully developed. The record does not contain any notices sent by CMS to the hospitals regarding Mr. Geffner's remaining benefit days, or documentation concerning the hospitals' awareness of available benefit days[3] or whether such payment would be considered overpayment by the agency under 42 C.F.R. § 409.68(c). Accordingly, upon remand, the ALJ's duty to develop the record would

---

[2] See Centers for Medicare and Medicaid Services, http://www.cms.hhs.gov/Manuals/.
[3] Currently in the record is a Hospital Issued Notice of Non-Coverage (HINN) dated February 12, 2004, indicating that Medicare coverage would end on February 15, 2004. Such a notice suggests that St. Francis hospital was unaware that Mr. Geffner's benefit days had expired as of November 20, 2003.

include additional factual development with respect to plaintiff's claim under 42 C.F.R. § 409.68.

### 4. *Inadequate Waiver of the Right to Counsel*

Finally, plaintiff alleges that plaintiff was compelled to appear pro se at the August 8, 2005 hearing regarding Claim One, contributing to the procedural errors in the proceedings below. (Pl.'s Mem. at 31.)

In the Social Security context, a claimant has both a statutory and a regulatory right to receive notice that she may obtain the assistance of counsel or that of a non-attorney during administrative review of an application for benefits. See 42 U.S.C. § 406(c); 20 C.F.R. § 404.1706; 20 C.F.R. § 404.1706; see also Collado, 2007 WL 2778664, at *10. Like the constitutional right to counsel, a claimant's right to retain either counsel or a representative may be waived by the claimant if she makes a knowing, willing, and voluntary waiver of this right. See, e.g., Alvarez v. Bowen, 704 F. Supp. 49, 52, (S.D.N.Y. 1989). The Second Circuit has found that an ALJ in a Social Security hearing must ensure that the claimant acknowledges the right to representation during the administrative hearing, and adequately waives such rights if she elects to proceed *pro se*. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507-08 (2d Cir. 2009). The appointment of representatives in the Medicare context is governed by 42 C.F.R. § 405.910. The Department of Health and Human Services indicates that such an appointment may be completed through the use of form CMS-1696.[4] According to 42 C.F.R. § 405.910, once a representative is appointed, revocation is not effective until the adjudicator receives a signed, written statement from the party. 42 C.F.R. § 405.910(m)(2).

---

[4] See Office of Medicare Hearings and Appeals (OMHA), Your Rights to Representation, http://www.hhs.gov/omha/process/representation/index.html.

Prior to the August 8, 2005 hearing, a representative from the Medicare Rights Center completed a form CMS-1696, which was signed by plaintiff and the representative on August 3, 2005. (A.R. at 115.) The representative faxed the completed form and a request for a one week postponement of the August 8, 2005 hearing to the ALJ on August 4, 2005. (A.R. at 114.) At the hearing, which went forward on August 8, 2005, the representative did not appear. The ALJ indicated that the adjournment was denied, that he did not grant adjournments with a day's notice, and that the representative had an obligation to appear. (A.R. at 343-44.) The ALJ stated that because he denied the adjournment, "this hearing is going to proceed today." (A.R. at 344.) The ALJ then asked plaintiff if she wished "to waive your right to the attorney . . . and proceed today, on your own, for the hearing?" (A.R. at 344.) In response, plaintiff stated, "I don't wish to waive my right." (A.R. at 344.) After a brief discussion, the ALJ stated that "I'll have this lawyer come on Wednesday at 3:30," referring to August 10, 2005, two days later. (A.R. at 346.) When plaintiff sought to introduce evidence, the ALJ responded,

> No. You have a lawyer. Let her do it. You're going to have a representative.
>
> Now, you could do it if they don't appear. I'll tell you, on that day, we're going to have a hearing. Or, I'm going to dismiss this case. I'll tell you right now.

(A.R. at 347.) In response, plaintiff indicated that she would proceed. (A.R. at 347.) The ALJ stated that "I don't want to induce you to waive anything. . . . My job is to protect your rights . . ." (A.R. at 348.) When plaintiff inquired if she could obtain counsel on appeal, the ALJ responded yes. Plaintiff then indicated that she would proceed, and orally waived her right to representation. (A.R. at 349.)

Based on the record, the appointment of the representative was effective when the ALJ received the completed form CMS-1696 on August 4, 2005. During the August 8, 2005 hearing, the ALJ referred to the individual listed as the representative on the form as plaintiff's "lawyer,"

and acknowledged the receipt of the form. The circumstances of the adjournment, and the dialogue between the ALJ and plaintiff, do not reveal that plaintiff made a knowing, willing, and voluntary waiver of representation. Regardless, the ALJ failed to comply with 42 C.F.R. § 405.910(m)(2) by failing to obtain the revocation of representation in a signed written statement. 42 C.F.R. § 405.910(m)(2).

Courts in the Social Security context have found that errors of this kind do not supply an independent basis to remand a proceeding to the Commissioner for further consideration. See Collado, 2007 WL 2778664, at *10; Alvarez, 704 F. Supp. at 52 (noting that a plaintiff must establish both that he or she did not knowingly waive his or her right to counsel and that he or she was prejudiced by this failure). However, these courts have found that when such an error augments a separate legal error committed by the ALJ and prejudices the claimant, the lack of a valid waiver of representation can supply a reason to remand the proceeding to the Commissioner for further consideration. Id.; see also Leonard v. Comm'r of Soc. Sec., 2008 WL 3285947, at *7 (N.D.N.Y. Aug. 7, 2008) (observing that the lack of representation, coupled with other legal error, may substantiate remanding a proceeding to the Commissioner).

In the instant action, the lack of a valid revocation of waiver of representation compounds the failure of the agency to consider plaintiff's guarantee of payment days claim under 42 C.F.R. § 409.68 discussed above. Accordingly, I find that the inadequate waiver supports remanding the case to the Secretary for further proceedings.

**CONCLUSION**

For the foregoing reasons, defendant's motion for judgment on the pleadings is denied and the case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/Signed by Judge Ross/

Allyne R. Ross
United States District Judge

Dated:      February 23, 2010
            Brooklyn, New York

Service List:

<u>Plaintiff (pro se)</u>
Rebecca Geffner
46-21 247th Street
Little Neck, NY 11362


<u>Defendant</u>
Seth D. Eichenholtz
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, NY 11201


cc: Magistrate Judge Bloom